[Cite as *Gauthier v. Gauthier*, 2025-Ohio-501.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| SU KANG GAUTHIER, | : | CASE NO. CA2024-05-026 |
| Appellee and Cross-Appellant, | : | |
| | : | O P I N I O N<br>2/18/2025 |
| - vs - | : | |
| | : | |
| FORREST P. GAUTHIER, | : | |
| Appellant and Cross-Appellee. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 07 DR 31415


Robert A. Klinger Co, LPA, and Robert A. Klingler, for appellee.

Thomas E. Grossmann, for appellant.



**M. POWELL, J.**

{¶ 1} Appellant, Forrest Gauthier, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, finding that his former wife and appellee, Su Kang Gauthier, owes him $225,476.94, declining to award him a lump sum judgment for the amount, and denying his motion for attorney fees. Su cross-appeals the trial

court's denial of her contempt motion against Forrest.[1]

**{¶ 2}** The parties were divorced on March 3, 2009. At the time of the divorce, Forrest was the "sole member" of Tesseron, Ltd., a corporate entity. Tesseron owned multiple patents, had pending patent applications, and was in the process of developing patents and completing patent applications for submission. The foregoing constituted the Marital Patent Portfolio ("MPP"). Prior to their divorce being finalized, the parties entered into a Full Text Separation Agreement ("FTSA"). The FTSA divided the parties' personal and marital property and provided that Forrest retained ownership of Tesseron and its assets, including the MPP.

**{¶ 3}** Section 7.5 of the FTSA established a fund of money (the "7.5. Funds ") to be used to pay certain joint obligations of the parties. Specifically, Section 7.5(a) through (d) provided that these funds be used to pay the parties' federal, state, and local income tax obligations for the tax years 2006 through 2008, joint litigation expenses, and any "outstanding Patent Costs." Section 7.5(e) further provided that any monies remaining after the payment of the foregoing costs

> will then be applied to any federal, state or local taxes attributable to the Funds which have not been paid under 7.5(a) such that any taxes attributable to the Funds are shared equally by the parties and then to Patent Costs. If the Funds are insufficient to make the payments required under this Paragraph 7.5(e), both parties will contribute equally to those payments.

**{¶ 4}** Section 7.5(c) of the FTSA defines Patent Costs as "any attorney fees, expenses and/or costs related to the prosecution and/or maintenance of the Marital

---

1. On December 23, 2024, Su filed an affidavit with this court, averring that she has dismissed her counsel and acceding to all of Forrest's claims on appeal. Su's counsel responded with his own affidavit in which he rebuts Su's claims concerning his representation of her and questions the legitimacy of Su's affidavit as a product of her free will. Subsequently, Forrest, by and through counsel, has moved to strike Su's counsel's affidavit. The affidavits are not part of our appellate record, and we do not regard Su's affidavit as a motion to dismiss her cross-appeal. Therefore, we will not consider the affidavits for any purpose, rendering Forrest's motion to strike moot.

Patent Portfolio (including, but not limited to, patent maintenance fees paid to the U.S. Patent Office)."[2]

{¶ 5}  Tesseron licensed its patents and brought patent infringement actions and other actions to enforce its patents and patent licensing.  The licensing and enforcement actions generated significant income.  Pursuant to Section 7.11 of the FTSA, Su was given the right to participate in such actions.  Su's participation required that she contribute to financing the actions and share in the proceeds from any successful actions. Should Su not participate in the actions, she was entitled to 20 percent of the net proceeds received by judgment, settlement, or license fees.  Section 7.11(c) defines Net Proceeds as "the Target Case Funds less attorney fees, and all costs and expenses related to or attributable to the Target Case and Patent Costs."[3]

{¶ 6}  Section 7.12 of the FTSA provided that "[i]n the event Forrest transfers all or a portion of his ownership in the [MPP] to another person or entity, Forrest shall pay Su, as a separate class of spousal support, a sum equal to 20% of the value of the consideration Forrest receives for the transfer of the [MPP]."  Section 7.12 further provided that the trial court retained "continuing jurisdiction to determine the value of the consideration Forrest receives for such transfer."

{¶ 7}  Section 8.1 of the FTSA provided that any proceeds received by Su pursuant to Sections 7.11 or 7.12 of the FTSA are considered spousal support.  Section

---

2. Patent prosecution is a term of art.  *Lemkin v. Hahn, Loeser & Parks L.L.P.*, 2010-Ohio-2074, ¶ 15 (10th Dist.).  It does not involve litigation.  Rather, in patent prosecutions, "inventors submit applications to the [United States Patent and Trademark Office], an administrative agency, in which they can argue that their claimed inventions are novel and not obvious to a person with ordinary skill in the art.  The PTO conducts a proceeding in which it either accepts or rejects the application; and, if the PTO rejects the application, the inventor has the right to appeal."  *United States v. Allergan, Inc.*, 46 F.4th 991, 996 (9th Cir. 2022).

3.  Pursuant to Section 7.11 of the FTSA, a "Target" is a person or entity currently identified, or that may be identified in the future, against whom Tesseron may take action to enforce or license its MPP rights. Pursuant to Section 7.11(b) of the FTSA, a "Target Case" is Tesseron's pursuit of "patent infringement or licensing claims or litigation against a particular Target for enforcement of the [MPP] rights."

8.4 provided that other than as set forth in Sections 7.11 and 7.12, "the amount and terms of the spousal support to be paid by Forrest to Su shall never be increased, altered, modified or changed in any manner by any Court for any reason, and jurisdiction shall not be reserved to any Court to make any such change[.]"

{¶ 8} In January 2010, the parties entered into an addendum agreement ("Addendum") to resolve disputes that had arisen regarding their rights and obligations under several sections of the FTSA, including Sections 7.5 and 7.11. Pursuant to the Addendum, Forrest paid Su the sum of $746,711.16, in consideration of which Su relinquished certain rights under the FTSA. Specifically, Paragraph 6 of the Addendum "expressly eliminate[d] any and all of Su's rights, claims, consideration and benefits set forth in and arising out of Section 7.11 of the FTSA and replace[d] them solely and only with the rights, claims, consideration and benefits set forth in" Paragraph 6 as follows:

> Forrest shall pay to Su, as a separate class of spousal support, a sum equal to 20% of the Net Proceeds (as defined in Section 7.11(c) of the FTSA) received by Tesseron from a judgment, license or settlement received from any third party entity after the [Addendum's] Effective Date[.] . . . Su expressly waives any right to participate in any way whatsoever (e.g., no involvement in decision making on any level, no status updates, no participation in events, no financial recovery except as specifically set forth in this provision, no communications with parties, no communications with counsel, no review of documents, et cetera) in any future claims, licensing activities or litigation arising under any part of the [MPP] . . . against any third parties except for the receipt of monies specifically called for in this section.

{¶ 9} In other words, Paragraph 6 eliminates Su's rights to participate in patent enforcement, infringement, and licensing proceedings under Section 7.11 of the FTSA. In lieu of these rights, Su is entitled to 20 percent of the net proceeds received by Tesseron from a judgment, license, or settlement with or from a third-party entity on or after January 7, 2010, the Addendum's effective date. The Addendum did not replace or

modify Section 7.12 of the FTSA.

{¶ 10} Tesseron subsequently assigned all right, title, and interest in the MPP to Forrest, making him the record owner of the MPP. On June 28, 2013, in consideration of $1,000,000, Forrest entered into an exclusive license agreement with Acacia Research Group LLC ("ARG"), granting ARG "all substantial rights in and to the [MPP]." Following disappointing results in patent litigation, Forrest terminated the exclusive license agreement in 2019.

{¶ 11} The 7.5 Funds became depleted in 2013. On October 24, 2022, Forrest sent a letter to Su, advising her that "as a continuation of" the 12 prior notices he had sent her between February 4, 2015, and March 23, 2022, "this is the final status and reporting notice of the MPP patent licensing program. I have decided to cease all efforts to license or monetize any of the patents of the MPP. The reports included with this notice are the final reports of the MPP Target Cases entered into since the 2010 Addendum." The letter further stated that "the terms of the FTSA ¶7.5 and Addendum are clear, if the Funds are insufficient to make the payments required under [¶7.5], both parties will contribute equally to those payments," that "FTSA ¶7.5. requires your 50% contribution of payments as they occur," that the 7.5 Funds "went into arrears in March, 2013 and . . . [y]ou were repeatedly notified of the deficit and your obligation to pay your 50% share," and that Su's outstanding liability of $225,476.94–her 50 percent share of Patent Costs incurred since the depletion of the 7.5 Fund–was due immediately.

{¶ 12} On August 15, 2023, Forrest filed a contempt motion against Su, including an allegation that she had failed to pay him her outstanding share of Patent Costs as required under Section 7.5 of the FTSA. Forrest also moved for "all attorney fees . . . incurred in this matter since December 1, 2010." Forrest successfully moved to transfer the contempt proceedings back to the Domestic Relations Division of the Warren County

Court of Common Pleas. The then sitting judge recused himself, and the Ohio Supreme Court appointed a visiting judge to preside over the case.

{¶ 13} On January 9, 2024, Su filed a contempt motion against Forrest, including an allegation that Forrest had failed to pay her 20 percent of the consideration he received when he transferred his interest in the MPP to ARG as required under Section 7.12 of the FTSA. The trial court conducted a hearing on Su's contempt motion on March 28, 2024, and a hearing on Forrest's contempt motion on January 16, 2024.

{¶ 14} By decision and entry of January 30, 2024, the trial court ordered Su to pay Forrest her outstanding share of Patent Costs under Section 7.5 of the FTSA. The court found that the Addendum and Section 7.5 of the FTSA clearly stated that the Patent Costs were an obligation of both parties–not solely Forrest. However, the trial court declined to award a lump sum judgment in favor of Forrest for the amount owed based upon Forrest's counsel's representation that the trial court lacked jurisdiction to do so and the lack of a prayer for a lump sum judgment in Forrest's motion. The trial court deferred ruling on Forrest's request for attorney fees pending resolution of Su's contempt motion.

{¶ 15} In March 2024, Forrest moved the trial court to issue a lump sum judgment against Su for Patent Costs. Forrest asserted that the trial court did indeed have jurisdiction to issue such judgment based upon additional research performed by Forrest's counsel and because the FTSA was fully incorporated in the parties' divorce decree. Su moved the trial court to reconsider its January 30, 2024 holding that she was liable to Forrest for her share of Patent Costs. Su argued that (1) the Addendum eliminated her responsibility for Patent Costs; (2) interpreting the FTSA as requiring Su to pay any deficit accruing in the enforcement of patent rights was unconscionable because it was contrary to the statutory definition and purpose of spousal support; and (3) Forrest's claim for Patent Costs was barred by the eight-year statute of limitations in

- 6 -

R.C. 2305.06. In particular, Su asserted that the statute began to run no later than February 4, 2015, when Forrest demanded payment for Su's share of Patent Costs, and expired eight years later, in February 2023. Su claimed that as Forrest filed his contempt motion in August 2023, his Patent Costs claim was time-barred.

{¶ 16} On April 15, 2024, the trial court denied Su's contempt motion. The trial court found that Forrest did not sell the MPP to ARG but only "granted a license to [ARG] for its prosecution of the patents," and that therefore, Forrest did not violate Section 7.12 of the FTSA.

{¶ 17} By decision and final judgment entry of April 17, 2024, the trial court addressed Forrest's motion for a lump sum judgment against Su for Patent Costs and Su's motion for reconsideration. The trial court found that Su owed Forrest $225,476.94 for her share of Patent Costs. However, the trial court once again declined to award Forrest a lump sum judgment for this amount because Forrest had previously taken the position in a Hamilton County civil action against Su, that a domestic relations court lacks subject-matter jurisdiction to render a lump sum judgment. The trial court found that Forrest was therefore estopped from changing the prayer for relief in his contempt motion. The trial court denied Forrest's request for attorney fees due to a lack of testimony from qualified counsel as to the reasonableness of the hourly rate and the reasonableness and necessity for the legal service rendered.

{¶ 18} The trial court rejected Su's claim on reconsideration that the Addendum eliminated her responsibility for Patent Costs. The trial court reasoned that while the Addendum modified Su's "rights, claims, consideration, and benefits" set forth in certain sections of the FTSA, it did not modify her obligation under the FTSA to pay Patent Costs. The trial court did not address Su's claim on reconsideration that its interpretation of the FTSA was unconscionable. However, Su had made the argument in a memorandum in

opposition to Forrest's contempt motion and the trial court rejected that argument in its January 30, 2024 decision.

{¶ 19} The trial court agreed with Su that Forrest's Patent Costs claim was barred by the statute of limitations in R.C. 2305.06. The trial court found that while the FTSA was incorporated into the divorce decree, it was not merged into the decree and thus "retained its character as a 'binding contract between the parties.'" The trial court found that Forrest's Patent Costs claim was barred by the R.C. 2305.06 six-year statute of limitations because Su's "dispute of the debt and her non-payment prior to 2015 [were] the date that the cause of action accrued," and Forrest did not file his contempt motion until August 15, 2023. Consequently, the trial court dismissed Forrest's Patent Costs claim and vacated its finding that Su owed Forrest $225,476.94 for Patent Costs.

{¶ 20} Forrest now appeals, raising two assignments of error. Su cross-appeals, raising two cross-assignments of error. Forrest's first assignment of error and Su's first cross-assignment of error will be addressed together.

{¶ 21} Forrest's Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ERRED BY NOT ISSUING A JUDGMENT TO FORREST FOR PATENT COSTS SU OWED UNDER THE FTSA.

{¶ 23} Su's Cross-Assignment of Error no. 1:

{¶ 24} THE TRIAL COURT ERRED IN FINDING THAT UNDER THE FTSA SU GAUTHIER OWES FORREST GAUTHIER $225,476 FOR PATENT COSTS.

{¶ 25} In his first assignment of error, Forrest challenges the trial court's failure to award him a $225,476.94 lump sum judgment for Su's share of Patent Costs, raising four issues for review. Forrest's first three issues for review challenge the trial court's dismissal of his Patent Costs claim as time-barred by the statute of limitations in R.C. 2305.06. Forrest's fourth issue for review challenges the trial court's dismissal of his

Patent Costs claim on the ground of judicial estoppel.

**{¶ 26}** In her first cross-assignment of error, Su argues the trial court erred in finding she owes Forrest $225,476.94 for her share of Patent Costs under the FTSA, raising two issues for review. We note that while the trial court found that Su owes Forrest "$225,476.94 as her portion of the costs related to the marital patents," the court ultimately dismissed Forrest's Patent Costs claim as being barred by the statute of limitations, thereby "vacating [Su's] obligation to pay patent enforcement expenses to [Forrest]." Thus, there is nothing for Su to appeal regarding Patent Costs. Nevertheless, we address her two issues for review as they have a bearing on our consideration of Forrest's first assignment of error.

**{¶ 27}** In her first issue for review, Su argues that Section 7.5 of the FTSA is unconscionable because it resulted in Su, "the supported spouse," owing Forrest, "the supporting spouse," $225,476.94. As stated above, Section 8.1 of the FTSA provides that any percentage received by Su under Sections 7.11 and 7.12 of the FTSA as a result of settlements/judgments or consideration received by Forrest from transferring ownership in the MPP to another entity, are considered spousal support. However, under Section 7.5(e) of the FTSA, Su was equally responsible with Forrest for Patent Costs. Su asserts it is unconscionable that she be indebted based upon an order for spousal support because (1) the Patent Costs were all incurred after the parties' divorce and 2010 Addendum and accumulated between January 2011 and August 2017, (2) this was not the result intended by the parties when they entered into the FTSA, and (3) she was at the mercy of Forrest because he had complete and unilateral control over the MPP and the Patent Costs.

**{¶ 28}** However, Su, who was represented by an experienced divorce attorney, voluntarily entered into the FTSA. Su worked at Tesseron during the marriage and claims

she helped Forrest build it.  She was therefore familiar with the risks of patent litigation, enforcement, and prosecution.  The parties specifically chose for Forrest to pay spousal support to Su based upon the formulas and terms set forth in the FTSA in lieu of the standard spousal support method employed by domestic relations courts.  Su represented to the trial court, under oath, that the terms of the FTSA were complete, fair, and acceptable to the parties.  The trial court found that the FTSA was fair and equitable, approved it, and incorporated it into the divorce decree.  Subsequently, Su never challenged it, including on the ground it was unenforceable or unconscionable.  The language of Section 7.5 is clear that Su's responsibility for Patent Costs under Section 7.5(e) is not part of the spousal support but a separate obligation.  Pursuant to the Addendum, and in consideration of $746,711.61, Su relinquished her right to participate in patent enforcement, infringement, and licensing proceedings.  Accordingly, Su's first issue for review lacks merit and is denied.

{¶ 29} In her second issue for review, Su argues that the Addendum eliminated any obligation she had under the FTSA to pay 50 percent of Patent Costs because the Addendum neither mentions nor reinstates her obligation to pay Patent Costs.

{¶ 30} Section 7.5(e) of the FTSA requires the parties to contribute equally to the Patent Costs should the 7.5 Funds become insufficient to pay for them.  Though the parties entered into the Addendum to resolve disputes that had arisen under the FTSA, including Sections 7.5 and 7.11, the Addendum did not replace the FTSA and only amended it as expressly set forth in the Addendum.  Moreover, the Addendum was entered in 2010, before any dispute related to Patent Costs had arisen.  While Paragraph 6 of the Addendum amended Section 7.11 of the FTSA, it kept the definition of Net Proceeds under the FTSA and specifically referenced Section 7.11(c) of the FTSA.  That provision defines Net Proceeds as the Target Cases Funds less attorney fees, costs and

expenses, and Patent Costs. Therefore, the Addendum incorporated the parties' FTSA obligation to contribute equally to the Patent Costs and neither relieved Su of her obligation to so contribute nor terminated or eliminated her obligation. Accordingly, Su's second issue for review lacks merit and is denied.

{¶ 31} Su's first cross-assignment of error is overruled.

{¶ 32} We now turn to Forrest's first assignment of error. In his first three issues for review, Forrest argues that the trial court erred in dismissing his Patent Costs claim as being time-barred by the statute of limitations in R.C. 2305.06.

{¶ 33} Relying upon the language of the FTSA and the 2009 divorce decree, the trial court found that although the FTSA was incorporated into the divorce decree, it was not merged into the decree and thus "retained its character as a 'binding contract between the parties,'" thereby effectively treating Forrest's contempt motion as though it was a claim for breach of contract.[4] Consequently, the trial court found that Forrest's Patent Costs claim was subject to the six-year statute of limitations for written contracts in R.C. 2305.06. Noting Forrest's 2015 demand for Su to pay her share of Patent Costs and Su's awareness of her nonpayment "even before 2015," the trial court determined that "[Su's] dispute of the debt and her non-payment prior to 2015 are . . . the date that the cause of action accrued." As Forrest did not file his contempt motion until August 15, 2023, the trial court held that his Patent Costs claim was barred by the six-year statute of limitations.

{¶ 34} Forrest asserts that the trial court (1) improperly applied the "discovery rule" to a breach-of-contract claim, (2) erred in finding his Patent Costs claim was barred by

---

4. In finding that the FTSA was a written contract, the trial court implicitly found that though incorporated into the divorce decree, it was not also an order of the court. However, as the issue was not raised on appeal, we decline to address whether the FTSA became a court order upon its incorporation into the divorce decree. We further note that a domestic relations court, such as the trial court, has subject-matter jurisdiction to consider a claim for breach of a separation agreement and award a lump sum judgment for such a breach because it is within the domestic relations court's authority to enforce its decrees under R.C. 3105.65(B).

- 11 -

the six-year statute of limitations that became effective in 2021, and (3) erred in finding that the cause of action accrued before 2015. A determination of when a cause of action accrues is a matter of law, which we review de novo. *Forest Hills Local School Dist. Bd. of Edn. v. Huegel*, 2008-Ohio-2414, ¶ 5 (12th Dist.). We address Forrest's second issue for review first.

{¶ 35} The parties agree that the trial court correctly identified R.C. 2305.06 as the applicable statute of limitations. R.C. 2305.06 currently provides, subject to certain inapplicable statutory exceptions, that "an action upon a specialty or an agreement, contract, or promise in writing shall be brought within six years after the cause of action accrued." As relevant here, R.C. 2305.06 was amended in 2012 and again in 2021. Specifically, the statute of limitations was changed to eight years on September 28, 2012, and to six years on June 16, 2021. An editor's note to the 2012 amendment of the statute provides that the limitations period for causes of action that accrued prior to the effective date of the 2012 amendment "shall be eight years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever occurs first." In turn, an editor's note to the 2021 amendment of the statute provides that the limitations period for causes of action that accrued prior to the effective date of the 2021 amendment "shall be six years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever occurs first." *See Tabbaa v. Nouraldin*, 2022-Ohio-1172 (8th Dist.).

{¶ 36} The trial court determined that Forrest's Patent Costs claim accrued in 2015, based upon his 2015 demand for payment, or before 2015, based upon Su's awareness of her nonpayment prior to 2015. As the claim accrued before the 2021 amendment to R.C. 2305.06 took effect, the eight-year statute of limitations applied, and the trial court

erred in applying the six-year statute of limitations that became effective in 2021.[5] *See Tabbaa*; *Rudolph v. Viking Internatl. Resources Co., Inc.*, 2017-Ohio-7369 (4th Dist.). Forrest's second issue for review is well taken.

**{¶ 37}** Although the trial court did not use the phrase "discovery rule" in determining when the cause of action accrued, it held that "'a cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he or she has been injured by the conduct of the defendant,'" quoting *Ault v. Jasko*, 1994-Ohio-376, ¶ 6. In its decision, the Ohio Supreme Court labels such rule as the "discovery rule." However, *Ault* did not involve a breach of contract, but rather was a case in which a 29-year-old plaintiff had sued her biological father, alleging he had sexually abused her, beginning when she was 12 years old. Furthermore, no Ohio court has applied the discovery rule to a claim for breach of contract. *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, ¶ 41 (10th Dist.). *See also Settles v. Overpeck Trucking Co.*, 1993 Ohio App. LEXIS 6217, *3 (12th Dist. Dec. 27, 1993); *Freelon v. GRG Farms, Inc.*, 2024-Ohio-4764, ¶ 30, fn. 2 (6th Dist.). The trial court, therefore, erred in applying the discovery rule in this case. Forrest's first issue for review is well taken.

**{¶ 38}** "Normally, a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run." *State ex rel. Teamsters Local Union 377 v. Youngstown*, 50 Ohio St.2d 200, 203-204 (1977). Regarding contract claims, the Ohio Supreme Court has held that "[a] cause of action for breach of contract does not accrue until the complaining party suffers actual damages as a result of the alleged breach."

---

5. Forrest's Exhibit 21 indicates that the 7.5 Funds, from which Patents Costs were paid, was depleted in March 2013. Assuming, arguendo, that Forrest's Patent Costs claim accrued in March 2013, it accrued after the 2012 amendment to the statute of limitations, and thus, the eight-year statute of limitations would apply.

*Kincaid v. Erie Ins. Co.*, 2010-Ohio-6036, ¶ 13. "Until [a party] refuses to pay a claim for a loss, [the other party] has suffered no actual damages for breach of contract . . . ." *Id.* Stated otherwise, a cause of action for breach of contract accrues when the contract is violated and actual damages occur. *Cadle Co. II, Inc. v. HRP Auto Ctrs., Inc.*, 2004-Ohio-6292, ¶ 10 (8th Dist.).

{¶ 39} Forrest argues that the cause of action accrued on December 16, 2015, when he first invoiced Su for her share of Patent Costs and Su did not pay or, alternatively, on October 24, 2022, when "Su's MPP Net Proceeds were applied to her Patent Costs debt, all remedies of the FTSA were exhausted, and the final total amounts she owed were known." In support of the latter date, Forrest relies on the "delayed injury" rule pursuant to which, where damages from a breach of contract evolve over time, the cause of action only accrues once the aggrieved party can ascertain the full extent of the damages. Forrest cites *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.*, 42 Ohio App.3d 6 (9th Dist. 1988) (statutory period in an action for the entire breach of the contract should be calculated from the time the plaintiff was first able to sue for an entire breach of the contract); and *Zink v. Harp*, 1991 Ohio App. LEXIS 5011 (12th Dist. Oct. 21, 1991) (cause of action accrued not when a storage tank was left underground in breach of contract but when the aggrieved party was forced to have it removed at his own expense 14 years later).

{¶ 40} Su argues that Forrest suffered actual damages, and thus the cause of action accrued, on March 11, 2013, when the 7.5 Funds was depleted and Forrest made up the deficit from his own funds and paid her share of the deficit. Alternatively, Su argues that even if the "continuing breach" exception to the general rule of accrual of the statute of limitations applies here, "any discrete breaches that occurred more than 8 years before August 15, 2023–that is, before August 15, 2015–are outside the statute of limitations

and cannot be recovered." Should this court find that some of Forrest's claims were timely filed, Su asks that the case be remanded to the trial court for further proceedings because it is impossible from the record to determine the status of the 7.5 Funds on any given date.

{¶ 41} In finding that Su owed Forrest for her share of Patent Costs, the trial court relied on Forrest's Exhibits 20 and 21. Exhibit 20 is a letter Forrest sent to Su on October 24, 2022, advising her that this was "the final status and reporting notice of the MPP patent licensing program," that "the MPP licensing program is concluded, the Patent Costs are paid, your share of the Net Proceeds is determined," and that Su's outstanding share of Patent Costs in the amount of $225,476.94 was due immediately. Exhibit 20 further stated,

> On multiple occasions I provided you . . . with the documentation of the disbursements of FTSA ¶7.5 Funds, [providing] to you the invoices and the proof of payment as required by the terms of the FTSA. The fund went into arrears in March 2013 and your 50% contribution was progressively due immediately as payments were made. You were repeatedly notified of the deficit and your obligation to pay your 50% share.

{¶ 42} Forrest testified that Su never objected to or challenged Exhibit 20. He also testified that he periodically asked Su to contribute to the Patent Costs after the 7.5 Funds was depleted, that Su never responded to his requests or paid her share of Patent Costs, and that he subsequently paid all the Patent Costs to maintain the viability of the MPP. Forrest also stated that following their divorce, he regularly provided Su with general status reports regarding patent litigation, that these reports usually came with the invoices for Patent Costs, and that some notices did not include invoices. Exhibit 20 indicates that Forrest sent Su 12 "notices," beginning on February 4, 2015. The record does not indicate when Forrest first invoiced Su for her share of Patent Costs. However, as stated

above, Forrest argues he first invoiced Su for her share of Patent Costs on December 16, 2015. Exhibit 20 indicates that Forrest's second notice to Su was sent on December 16, 2015.

{¶ 43} Exhibit 21 is a report from Forrest's accountant at the conclusion of the MPP licensing program. Exhibit 21 lists Patent Costs between January 2011 and August 2017 and Patent Reexamination Costs between September 2013 and October 2015. Forrest testified that the Patent Costs for which he and Su were equally responsible included patent reexamination costs. Such costs are related to patent prosecution as this term of art is understood, and not to patent litigation, and are incurred when an individual or entity files an ex-parte request with the USPTO to reexamine the validity of a patent. Exhibit 21 shows that the 7.5 Funds was first depleted on March 11, 2013, with a total deficit of $12,488.63, making Su's share of the deficit $6,244.32; that the 7.5 Funds deficit increased incrementally over the next few years until Su's share of the deficit increased to $19,077.32 on August 10, 2015; and that the 7.5 Funds deficit greatly increased the next few years due to patent reexamination costs until Su's share of the deficit increased to $165,476.94 on August 18, 2017.

{¶ 44} The trial court held that Forrest's Patent Costs claim was barred by the statute of limitations based upon its determination that Su's "dispute of the debt and her non-payment prior to 2015 [constituted] the date that the cause of action accrued." Because the trial court failed to specify an exact accrual date, it cannot be determined from its April 17, 2024 decision and final judgment entry when the eight-year statute of limitations began to run in relation to Forrest's August 15, 2023 contempt motion.

{¶ 45} Despite Forrest's characterization of Su's obligation to pay her share of Patent Costs in his October 24, 2022 letter to her, the FTSA does not set forth when the parties must pay their share of Patent Costs or when demands for payment must be

made. Rather, Section 7.5(e) only states that "[i]f the Funds are insufficient to make the payments required under this Paragraph 7.5(e), both parties will contribute equally to those payments." Section 7.9(b) does provide that "any Patent Costs must be satisfied before any other payments shall be made by Forrest to Su under this Agreement."

{¶ 46} Assuming, arguendo, that Forrest suffered actual damages when he first invoiced Su on December 16, 2015, and Su subsequently failed to pay her share of Patent Costs, the cause of action accrued on December 16, 2015, and Forrest's August 15, 2023 contempt motion was timely filed within the eight-year statute of limitations. This, in turn, would mean that Forrest's February 4, 2015 notice to Su was barred by the statute of limitations. Alternatively, the fact Forrest started to pay Su's share of Patent Costs upon depletion of the 7.5 Funds and continued to do so until the final accounting of the MPP program and Forrest's October 24, 2022 letter to Su does not mean Forrest suffered actual damages during that period of time. By insuring that all the Patent Costs were paid, Forrest maintained the viability of the MPP throughout the years, which was beneficial to the MPP and the parties, including Forrest. Under that scenario, Su's ultimate liability for her share of Patent Costs and thus, Forrest's exact amount of actual damages could not be determined until all costs were incurred and all settlement, judgments, and licensing fees had been received. Because Su's ultimate liability for her share of Patent Costs was not determined until October 2022, Forrest's contempt motion was timely filed within the eight-year statute of limitations.

{¶ 47} Thus, whether the cause of action accrued on October 24, 2022, or December 16, 2015, the trial court erred in finding that Forrest's Patent Costs claim was barred by the statute of limitations under R.C. 2305.06. Forrest's third issue for review is well taken.

{¶ 48} In his fourth issue for review, Forrest argues the trial court erred in

dismissing his Patent Costs claim on the ground of judicial estoppel.

**{¶ 49}** In its January 30, 2024 decision, the trial court ordered Su to pay Forrest her share of Patent Costs under Section 7.5 of the FTSA but declined to award a lump sum judgment for the amount owed based, in part, upon Forrest's counsel's then representation that the trial court lacked jurisdiction to do so. Subsequently, upon conducting additional research, Forrest's counsel conceded the trial court had jurisdiction to enforce the incorporated provisions of the FTSA in the divorce decree and award a lump sum judgment. In its April 17, 2024 decision, the trial court found that Su owed Forrest $225,476.94 for her share of Patent Costs. However, the trial court declined to award Forrest a lump sum judgment for this amount because Forrest had previously taken the position in a civil action filed against Su in Hamilton County that a domestic relations court lacks subject-matter jurisdiction to award a lump sum judgment. The trial court found that Forrest was therefore estopped from changing the prayer for relief in his contempt motion.

**{¶ 50}** The doctrine of judicial estoppel precludes a party from taking a legal position inconsistent with one it successfully and unequivocally asserted in a prior judicial proceeding. *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 29. The purpose of judicial estoppel is "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency for the moment." *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 25. The doctrine applies only when a party shows that his opponent "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Id.* The doctrine applies only when the party making the inconsistent assertion was successful in making the prior assertion. *Edwards v. Edwards*, 2007-Ohio-123, ¶ 11 (12th Dist.).

- 18 -

{¶ 51} The other judicial action referred to by the trial court in applying judicial estoppel is *Gauthier v. Gauthier*, 2018-Ohio-4970 (1st Dist.). That case arose from a civil lawsuit Forrest filed against Su and her attorney in the Hamilton County Court of Common Pleas for Su's conversion of personal property allocated to Forrest in the divorce. The case was dismissed on summary judgment grounds, and Forrest was ordered to pay Su and her attorney $96,000 in attorney fees for engaging in frivolous conduct by filing the civil action. Forrest appealed to the First District Court of Appeals, arguing he had not engaged in frivolous conduct by seeking an award of damages that could not be issued by a domestic relations court. *Id.* at ¶ 22. The court of appeals reversed the trial court's finding that Forrest had acted frivolously and its award of attorney fees on that basis as follows: "We cannot conclude that no reasonable attorney would have filed the personal-property claims, which . . . sought an award of damages on claims for breach of contract and conversion regarding separation of the parties' personal property, in a court of common pleas rather than a domestic relations court." *Id.* at ¶ 23-24.

{¶ 52} The *Gauthier* decision relied upon by the trial court set forth issues that are neither involved nor relevant here. In that case, Forrest simply sought tort damages for the theft of his personal property and did not argue that a domestic relations court generally lacks jurisdiction to award a lump sum judgment. Likewise, the First District Court of Appeals did not hold that a domestic relations court lacks jurisdiction to award a lump sum judgment and simply held it was not frivolous for Forrest to make the argument that Hamilton County was the proper county to file his personal-property claims. In determining whether to invoke judicial estoppel, courts "consider whether the party to be estopped has persuaded a court to accept the party's earlier position, so that subsequent acceptance of an inconsistent position would create the risk of inconsistent court determinations." *Independence*, 2014-Ohio-4650 at ¶ 32. We find no such risk here.

The trial court therefore erred in applying judicial estoppel to Forrest's Patent Costs claim. Forrest's fourth issue for review is well taken.

{¶ 53} In light of all of the foregoing, Forrest's first assignment of error is sustained.

{¶ 54} Forrest's Assignment of Error No. 2:

{¶ 55} THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED FORREST'S ATTORNEY FEES REQUEST FOR LACK OF PROOF.

{¶ 56} Along with his contempt motion, Forrest requested "all attorney fees . . . " "incurred in this matter since December 1, 2010." The request was supported by an affidavit executed by Forrest's primary counsel stating the hourly rate charged by the primary counsel, two co-counsels, and a law school graduate, and an attorney time sheet describing the work performed by each individual since December 2010, the number of work hours performed, and each individual's hourly rate, for a total amount of attorney fees of $207,412.50. The affidavit further stated that Forrest's primary counsel has been representing Forrest in this case since December 2009, that the time he has spent on this matter "is reasonable and appropriate," and that the hourly rate and time spent on the case was "very reasonable" for one co-counsel, reasonable for the other co-counsel, and reasonable for the law school graduate. The trial court denied the request for lack of testimony from qualified counsel as to the reasonableness of the hourly rate and the reasonableness and necessity for the legal services rendered. On appeal, Forrest argues the trial court erred in failing to award him attorney fees because the affidavit and attorney time sheet comply with Loc.R. 3.8 of the Warren County Common Pleas Court, Domestic Relations Division.

{¶ 57} A trial court has discretion to determine the appropriate amount of attorney fees to award in each case, and thus, the trial court's determination will not be reversed on appeal absent an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d

143, 146 (1991). Reasonable attorney fees must be based upon actual services performed by the attorney and upon the value of those services. *In re C.L.W.*, 2024-Ohio-1519, ¶ 59 (12th Dist.). "A raw calculation of hours spent multiplied by the attorney's hourly rate is not sufficient to determine the reasonableness of the fees." *M.A.B. v. B.R.L.*, 2024-Ohio-573, ¶ 36 (8th Dist.). There is no steadfast rule in Ohio that the "reasonableness" of attorney fees must be proved by expert testimony. *Murray v. Dunn*, 2024-Ohio-1639, ¶ 29 (12th Dist.). Nonetheless, "[i]n order to allow an award of attorney fees, there must be evidence concerning the proper measure of such fees." *Auber v. Marc Glassman, Inc.*, 2002-Ohio-2749, ¶ 26 (8th Dist.).

**{¶ 58}** In support of a motion/request for attorney fees, Loc.R. 3.8 requires the attorney to present (1) "an itemized statement describing the services rendered, the time for such services, and the requested hourly rate," (2) an affidavit regarding whether the case was complicated by new or unique issues of law, difficulty in ascertaining or valuing the parties' assets, problems with completing discovery, and any other factor necessitating extra time being spent on the case, (3) an affidavit regarding the attorney's years in practice and experience in domestic relations cases, and (4) evidence of the parties' respective incomes and expenses, if not otherwise disclosed during the proceedings. Loc.R. 3.8(5) provides that "[f]ailure to comply with the provisions of this rule shall result in the denial of a request for attorney fees, unless jurisdiction to determine the issue of fees is expressly reserved in any order resulting from the hearing." Although Loc.R. 3.8(5) prescribes the content of a motion for attorney fees, it does not provide that attorney fees will automatically be awarded based only upon compliance with the rule.

**{¶ 59}** The attorney fees affidavit and attorney time sheet submitted by Forrest's primary counsel were admitted as Exhibit 24 during the January 16, 2024 hearing. On direct examination, Forrest simply confirmed that Exhibit 24 sets forth the services

performed by his primary counsel and the two co-counsels and the hourly rates charged by each counsel. Forrest stated that but for Su's failure to comply with the divorce decree and the FTSA, he would not have incurred any attorney fees.

{¶ 60} The trial court did not abuse its discretion in denying Forrest's request for attorney fees. While Exhibit 24 complied with Loc.R. 3.8(1) in that it included an itemized statement, it did not address whether the case was complicated by any of the factors listed in Loc.R. 3.8(2), did not present evidence of the parties' income and expenses, and did not describe the three counsels' years in practice and experience in domestic relations cases. *See* Loc.R. 3.8(2)-(4). Further, Forrest failed to present any testimony from qualified counsel as to the reasonableness of the hourly rate and the reasonableness and necessity for the legal service rendered. As Forrest was seeking a large award of attorney fees in excess of $200,000, it was reasonable for the trial court to want evidence and expert testimony in support of his request for attorney fees and not simply an affidavit and an attached itemized statement.

{¶ 61} Forrest's second assignment of error is overruled.

{¶ 62} Su's Cross-Assignment of Error No. 2:

{¶ 63} THE TRIAL COURT ERRED IN FAILING TO GRANT SU GAUTHIER'S CROSS-MOTION FOR A CONTEMPT FINDING UNDER ¶ 7.12 OF THE FTSA AND ¶ 6 OF THE 2010 AGREEMENT.

{¶ 64} Su argues the trial court erred by finding that Forrest's 2013 exclusive license agreement with ARG did not violate Section 7.12 of the FTSA.

{¶ 65} As stated above, Section 7.12 provides that in the event Forrest transfers all or a portion of his ownership in the MPP to another entity, he is required to pay Su 20 percent of the consideration he receives for such transfer. On June 28, 2013, in consideration of $1,000,000, Forrest entered into an exclusive license agreement with

- 22 -

ARG, granting ARG "all substantial rights in and to the [MPP]." Forrest terminated the exclusive license agreement in 2019. Citing Forrest's testimony and Exhibits 26, 27, and 28, the trial court found that Forrest "did not sell the patents but, instead, granted a license to a third-party for the prosecution of the patents. Accordingly, the Court finds that [Forrest] has not violated the terms of the FTSA. Therefore, [Su] has failed to prove any contempt."

{¶ 66} 35 U.S.C. 281 provides that "[a] patentee shall have remedy by civil action for infringement of his patent." "When the entity that holds legal title to the patent makes an *assignment of all substantial rights* under the patent, then that assignee is deemed the effective patentee under 35 U.S.C. § 281 with effective title to the patent, and alone has standing to maintain an infringement suit in its own name." (Emphasis in original.) *Keranos, LLC v. Silicon Storage Technology, Inc.*, 797 F.3d 1025, 1031 (Fed.Cir. 2015).

{¶ 67} 37 C.F.R. 3.1 defines an assignment as "a transfer by a party of all or part of its right, title and interest in a patent [or] patent application[.]" An assignment of a patent "is the transfer to another of a party's entire ownership interest or a percentage of that party's ownership interest in the patent." *See Manual of Patent Examining Procedure*, Section 301 (Rev. E9_R-08.2017). By contrast, "the licensing of a patent transfers a bundle of rights which is less than the entire ownership interest, e.g., rights that may be limited as to time, geographical area, or field of use." *Id.* "A patent license is, in effect a contractual agreement that the patent owner will not sue the licensee for patent infringement if the licensee makes, uses, offers for sale, sells, or imports the claimed invention, as long as the licensee fulfills its obligations and operates within the bounds delineated by the licensing agreement." *Id.* A license, including an exclusive one, is not an assignment of patent rights in the patent or application. *Id.* "Transfer of (1) the exclusive right to make, use, and sell products covered by the patent; (2) the right to

sue for infringement of the patent; and (3) a virtually unrestricted authority to sublicense its rights under the agreement . . . strongly favor[s] a finding of an assignment, not a license." *Keranos* at 1032. *See also Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed.Cir. 2010).

**{¶ 68}** The exclusive license agreement granted ARG "all substantial rights in and to the Patents including

> The worldwide, exclusive right and license under the Patents to make, have made, use, import, offer or sell products or services covered by the Patents, including the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except as expressly set forth in this Agreement, [Forrest] retains no rights in or to the Patents.

**{¶ 69}** Forrest testified that the purpose of the exclusive license agreement with ARG was for ARG to finance patent litigation and that he and ARG would then split the proceeds equally. Forrest testified that the license agreement was not an assignment of the MPP to ARG, that the agreement only granted partial rights to ARG, and that he is listed and always has been listed as the owner of each patent in the MPP. Though Forrest recognized that a license agreement entails a substantial grant of rights to the patents, he testified he retained the right to sue for infringement of the MPP and denied he gave up all of his rights to pursue any patent litigation when he entered into the agreement with ARG. Forrest also testified that his 2019 termination of the agreement "concluded any rights that [ARG] had."

**{¶ 70}** In support of his position, Forrest submitted three exhibits which were admitted into evidence. Exhibit 26 is the exclusive license granted to ARG, which provides that

> [Forrest] grants to [ARG] all substantial rights in and to the Patents including the worldwide, exclusive right and license

under the Patents to make, have made, use, import, offer or sell products or services covered by the Patents, the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except for ownership of the Patents, [Forrest] expressly retains no rights in or to the Patents . . . .

{¶ 71} Exhibits 27 and 28 are 2015 orders from two federal district courts referencing the exclusive license agreement. Exhibit 28 provides that pursuant to the exclusive license agreement, Forrest "maintains a reversionary right in the patents to the extent the License Agreement is terminated and retains a transferable right to practice the patents and develop and market patent inventions." Exhibit 27 provides that "all right, title, and interest in the asserted patents is owed by the inventor of the patented technology," i.e., Forrest. Su did not rebut Forrest's testimony and evidence.

{¶ 72} In light of the foregoing, the trial court did not err in finding that Forrest did not assign ownership of the MPP to ARG but instead, simply granted a license to ARG, and that therefore, Forrest did not violate Section 7.12 of the FTSA.

{¶ 73} Su's second cross-assignment of error is overruled.

{¶ 74} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

HENDRICKSON, P.J., and PIPER, J., concur.