[Cite as *Smith v. Avery*, 2026-Ohio-1931.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
RICHLAND COUNTY, OHIO

| | |
|---|---|
| BRAD SMITH, et al., | Case No. 2025 CA 0106 |
| Plaintiffs - Appellees | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Richland County, Probate Division, Case No. 20203010A |
| DARIN AVERY, TRUSTEE OF THE ROBERT H. FOX REVOCABLE TRUST, | |
| | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment: May 26, 2026 |
| and | |
| RODNEY ALLEN FOX, et al., | |
| Defendants-Appellees | |

BEFORE: Craig R. Baldwin, Robert G. Montgomery, and David M. Gormley, Judges

APPEARANCES: Robert A. Franco, Mansfield, Ohio, for Plaintiffs-Appellees Brad Smith, Lisa Paul and Laurel Selvey; Brian J. Halligan,* Mansfield, Ohio, for Defendant-Appellant Darin Avery; Jessica S. Forrest & Brianna M. Prislipsky (Reminger Co., LPA), Cleveland, Ohio, and Shana B. Demooy (Reminger Co., LPA), Columbus, Ohio, for Defendants-Appellees Rodney Allen Fox, Vicki Papazian, Richard Fox, Tangela Taylor, and Mikayla Taylor; C. Richard Thompson, Mansfield, Ohio, for Defendant-Appellee Nancy Fidler; John S. Dilts, Mansfield, Ohio, for Defendants-Appellees Josh Smith and Sean Smith.

* Attorney Halligan died shortly after the briefing concluded in this case

*Gormley, J.*

{¶1}   After Robert Fox, his wife Phyllis, and their two sons had passed away, some of Phyllis's distant relatives filed a lawsuit in the probate court in Richland County asking that court to determine which person or persons are now the rightful beneficiaries of a trust that Robert Fox had created and funded for his sons' benefit decades earlier.  Darin Avery — the court-appointed successor trustee of that trust, which is called the Robert H.

Fox Revocable Living Trust — disagrees with the probate court's decision on that question, and Avery has asked us to undo it. Because we find that the probate court properly exercised its jurisdiction to address the question and correctly answered it, we affirm.

**The Key Facts**

{¶2} Robert H. Fox — who had operated an auto-parts business in Mansfield in the 1970s and 1980s — signed his will as well as the document creating the Robert H. Fox Revocable Living Trust on the same day in July 1991. The attorney who prepared the former document also prepared the latter. Robert's wife Phyllis had died two years earlier, and the Trust named the couple's two adult sons, Gregory and Jeffrey, as the Trust's beneficiaries.

{¶3} Robert, who served as the trustee while he was alive, died in February 2003, and his son Gregory took over as trustee then. Neither son ever married, and neither ever fathered any children. Jeffrey died intestate in February 2022, and his brother Gregory died intestate two months later.

{¶4} Avery — an attorney with no connection to the Fox family — was appointed by the probate court in Richland County as administrator of Gregory's estate and, later, as successor trustee of the Trust. In October 2023, Avery filed in the probate court a document that he labeled as a "request for instructions," and in it he floated the theory that he, as "final trustee," might be the intended beneficiary of the entire Trust corpus. He withdrew that request after the plaintiffs in this case filed a declaratory-judgment action in the trial court.

{¶5} Three of Phyllis's distant relatives filed that lawsuit in the trial court in 2024 against various other distant relatives of either Phyllis or Robert, and the plaintiffs named

Avery as a defendant in the case too. The plaintiffs asked the trial court to interpret the Trust document and to distribute the Trust's assets in accordance with both Robert's wishes and Ohio law.

{¶6} The plaintiffs and all of the defendants except Avery eventually agreed that none of them had any personal knowledge of Robert's intent when he created the Trust in 1991, and they all agreed, too, that they knew of no witnesses who could testify about that intent. Avery, who had been appointed as trustee several years after Robert's death and who was himself a stranger to the family, expressed a contrary view, but he offered no clear theories to the trial court as to how the Trust should be construed or how the Trust's assets should be distributed.

{¶7} Avery filed three motions to dismiss and a motion for summary judgment, and he opposed all efforts by the family members who were asking the trial court to interpret the Trust document and distribute the Trust's assets.

{¶8} The trial court denied Avery's motions as well as a cross-motion for summary judgment filed by some of the other parties in the case, and then the trial court — relying on a provision of the Trust document explaining what should happen to the Trust's income and principal "[i]n the event that there shall be no surviving named beneficiaries" — ordered that the Trust's income and principal be distributed to five of the defendants. Each of those defendants is a distant relative of Robert, and they appear to be Robert's only living heirs. The other six parties (aside from Avery) are all distant relatives of Phyllis, and none of them, according to the trial court, are entitled to any of the Trust's assets.

{¶9} Despite that adverse finding by the trial court, none of those six parties has appealed. Only Avery has asked us to undo the trial court's decision.

## The Probate Court Properly Chose to Decide the Issue Raised by the Plaintiffs

{¶10} Avery's first, third, and seventh assignments of error all attack the trial court's decision to reach the merits of the question raised by the plaintiffs about the proper interpretation of the Trust document and about the proper distribution of the Trust's assets. According to Avery, the plaintiffs' amended complaint sought only a declaration that the Trust's assets belong to the estates of brothers Gregory and Jeffrey Fox, and Avery says that once the trial court rejected that theory, it had no business proceeding to identify the Trust's rightful beneficiaries. The trial court, in Avery's view, either had to grant what Avery describes as the limited relief requested by the plaintiffs or dismiss the case. We disagree.

{¶11} Whether a matter is appropriate for declaratory judgment is committed to a trial court's sound discretion. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1, 13. An abuse of discretion has occurred when the trial court's decision was "unreasonable, arbitrary, or unconscionable" and was not "merely an error of law or judgment." *State v. Thompson*, 2015-Ohio-92, ¶ 18 (5th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} And we review a ruling on a Civil Rule 12(B)(6) motion to dismiss — which Avery did file in the trial court — with fresh eyes. *Daddario v. Rose*, 2022-Ohio-3537, ¶ 19 (5th Dist.). That kind of motion in a case such as this should be granted only where no real controversy exists or where the requested declaration would not terminate the uncertainty. *Fioresi v. State Farm Mut. Auto. Ins. Co.*, 26 Ohio App.3d 203, 203-204 (1st Dist. 1985).

**{¶13}** The Trust held assets that Avery, as trustee, refused to distribute. The plaintiffs' amended complaint placed the question of who was entitled to those assets squarely before the trial court, and as that court correctly noted, that question existed independently of the particular answer the plaintiffs proposed.

**{¶14}** Once the trial court rejected the theory that the Trust's assets belong to Gregory's estate — a theory that rested on the fact that he was the last to die of the two Trust beneficiaries, and so the Trust's assets, according to the amended complaint, should be distributed to his surviving heirs — that court did not, as Avery suggests, exceed its authority by pressing on to identify the proper beneficiaries. Just the opposite. The Trust assets had to go somewhere, and the probate court would have abdicated its responsibility had it left the Trust's property in administrative limbo. Identifying the beneficiaries of a trust whose named beneficiaries have all died without issue is the very task R.C. 2721.05 contemplates. (That statutory provision — which the plaintiffs cited in their amended complaint — empowers any person "interested . . . in the administration of a trust" to ask a court to "declar[e the] . . . rights or legal relations" in cases involving the "ascertain[ment] . . . of . . . heirs" and the "administration of . . . the . . . trust.")

**{¶15}** The trial court, then, surely did not abuse its discretion when it resolved the controversy that the trustee's refusal to distribute the Trust's assets had created. *First Natl. Bank v. Miami Univ.*, 121 Ohio App.3d 170, 174 (12th Dist. 1997) (a probate court is authorized to "declare the rights and legal relations of persons interested in the administration of an estate or a trust").

**{¶16}** Avery's related contention that the sole controversy presented in the plaintiffs' lawsuit was a dispute between him and the non-party estates of Gregory and Jeffrey misreads the Trust. As we explain below, the Trust does not call for the Trust's

assets to be distributed to the brothers' estates but instead directs that those assets go to Robert Fox or to his heirs under Ohio law. The plaintiffs' interests, if they exist at all, arise under the Trust rather than through any decedent's estate. The parties to this controversy were the proper ones: the trustee and the putative beneficiaries. Thus, the trial court rightly denied Avery's requests that the lawsuit be dismissed.

{¶17} The first, third, and seventh assignments of error are overruled.

## The Plaintiffs Had Standing to Sue and Did Not Violate the Trust's No-Contest Clause

{¶18} Avery's fourth and fifth assignments of error focus on the plaintiffs' alleged lack of standing and on what Avery claims was the plaintiffs' violation of the Trust's no-contest clause. To review the trial court's ruling on the latter issue, we of course look with fresh eyes at the Trust document containing the no-contest clause, while a party's standing to sue is likewise a question of law that we review de novo. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20.

{¶19} R.C. 2721.05 — the statutory provision that we quoted above in paragraph 14 — confers standing on the plaintiffs, who are distant relatives of Phyllis Fox (and who are also, therefore, distant relatives of Phyllis's late son Gregory Fox, who was the last-to-die beneficiary of the Trust). The plaintiffs certainly had a direct pecuniary interest in any legal determination about the proper construction of the Trust. They are precisely the "persons interested" that the statute envisions. *State ex rel. Abraitis v. Gallagher*, 2015-Ohio-2312, ¶ 13.

{¶20} Avery's argument that the plaintiffs lacked standing because they themselves did not claim beneficiary status conflates standing with the resolution of the question they presented. (And the plaintiffs did in fact allege in the amended complaint

that they were entitled to a portion of the Trust's assets, though they are no longer pursuing that claim.) Whatever the plaintiffs' views were or became about their right to some of the Trust's assets, they at all times wanted an answer from the trial court. The very purpose of the declaratory-judgment action was, after all, to determine who the rightful beneficiaries were.

**{¶21}** Avery's reliance on the Trust's no-contest provision fares no better when we, as we must, "look at the language used in the trust" and "examine its plain and ordinary meaning." *Apple-Chamberlain v. Apple*, 2025-Ohio-5388, ¶ 48 (6th Dist.).

**{¶22}** Article XIV of the Trust forbids any beneficiary from either contesting the validity of the Trust or seeking to "void, nullify, or set aside this trust or any of its provisions." Yet, participation in a lawsuit asking a court to construe a trust's terms does not run afoul of that type of no-contest language, even where the parties advance competing contentions about the meaning or applicability of particular clauses. *Natl. City Bank v. de Laville*, 2009-Ohio-5725, ¶ 20 (6th Dist.).

**{¶23}** No party sought in the trial court to invalidate the Trust. The plaintiffs instead sought its interpretation and asked that the document be enforced. And certainly no action on the part of any of the five defendants who were found by the trial court to be the Trust's rightful beneficiaries can be said to have run counter to the no-contest clause.

**{¶24}** The fourth and fifth assignments of error are overruled.

## Neither the Statute of Limitations nor the Doctrine of Claim Preclusion Barred the Plaintiffs' Suit

**{¶25}** Avery's sixth assignment of error contends that the plaintiffs' lawsuit was barred by the statute of limitations and by the doctrine of claim preclusion. We review these issues with fresh eyes. *See Gauthier v. Gauthier*, 2025-Ohio-501, ¶ 34 (12th Dist.)

("A determination of when a cause of action accrues is a matter of law" that is reviewed "de novo"); *AJZ's Hauling, LLC v. TruNorth Warranty Programs of North America*, 2023-Ohio-3097, ¶ 16 ("We review de novo the question whether res judicata applies to a claim or issue").

{¶26} Avery argues that any claim under the Trust accrued at Robert's death in 2003 and that the ten-year limitations period in R.C. 2305.14 — Ohio's general statutory limitations period for actions not governed by other limitations provisions — expired long before the plaintiffs filed suit in 2024.

{¶27} But no justiciable controversy arose in 2003 when Robert Fox died. Robert's two surviving sons took no steps to dissolve the Trust then, and one of them functioned as the trustee until he himself died in 2022. Only then, when Avery was named as the trustee, and in the following year, when Avery disputed the family members' right to receive the Trust's assets, did a dispute arise. We believe it was then that any limitations period began to run. *See Cundall v. U.S. Bank*, 2009-Ohio-2523, ¶ 27 ("Until the trustee repudiates his trust obligation, to the knowledge of the . . . [trust beneficiary], no cause of action exists against which a statute of limitation [for claims of fraud, self-dealing, and other breaches of a trustee's fiduciary duties] could operate"); *Corron v. Corron*, 40 Ohio St.3d 75, 79 (1988) ("In order for a party to seek a declaratory determination under R.C. 2721.03 or 2721.05, there must be an actual controversy, the resolution of which will confer certain rights or status upon the litigants").

{¶28} The controversy here arose, at the earliest, in 2022, when both named beneficiaries had died without issue. Assuming, as Avery claims, that the ten-year limitations period in R.C. 2305.14 governs this controversy, the plaintiffs' action in 2024 was timely filed.

**{¶29}** Avery's reliance on the claim-preclusion doctrine is likewise a nonstarter. Under that doctrine, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), paragraph one of the syllabus. And that doctrine provides, too, that a final judgment between parties to litigation is "conclusive as to all claims which were or might have been litigated in a first lawsuit." *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986).

**{¶30}** Claim preclusion is marked by four key elements: "'(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

**{¶31}** Avery contends that a 2003 trial-court order closing Robert's estate and transferring its remaining assets to the Trust now bars the plaintiffs from seeking the dissolution of the Trust and the distribution of its assets. But the Trust document itself was not even before the probate court in 2003. The question of who would receive the Trust's assets upon the deaths of Robert's sons if they were to die without issue was neither litigated nor decided in 2003, so claim preclusion does not bar the resolution of those issues now.

**{¶32}** The sixth assignment of error is overruled.

**The Trial Court Had No Obligation to Hold an Evidentiary Hearing**

{¶33} In his second assignment of error, Avery contends that the trial court should have held an evidentiary hearing before resolving any ownership questions surrounding the Trust's assets. Whether to hold such a hearing in connection with a dispositive motion, though, is committed to the trial court's discretion. *BancOhio Natl. Bank v. Dixon*, 1991 Ohio App. LEXIS 4838, *2 (5th Dist. Oct. 3, 1991).

{¶34} All of the family members involved in the case — including all plaintiffs as well as all defendants except Avery — agreed that they had no personal knowledge of Robert's intent in creating the Trust and that they knew of no witnesses who could testify about the Trust's terms. Avery did not embrace that view, but he stood in no better position to offer insights about the Trust document's origin or meaning. He was, after all, a stranger to the Fox family, was appointed as trustee nearly two decades after Robert's death, and had no personal knowledge to offer. The only "evidence" he purported to rely on — Robert's written will — was attached to Avery's summary-judgment motion and was therefore available for the trial court's review.

{¶35} In these circumstances, we see no abuse of discretion by the trial court in its decision to act on the parties' dueling motions without holding an evidentiary hearing.

{¶36} And Avery's invocation of due process adds nothing. Due process at the summary-judgment stage "requires . . . sufficient notice and an opportunity to respond," *Ameritech Publishing, Inc. v. Matejkovic*, 2008-Ohio-2112, ¶ 9 (12th Dist.), but "a trial court is not required to schedule an oral hearing on every motion for summary judgment," and "[w]hether to grant a party's request for oral hearing is a decision within the trial court's discretion." *Hooten v. Safe Auto Ins. Co.*, 2003-Ohio-4829, ¶ 14.

**{¶37}** Avery had a full opportunity to brief the issues, attach documentary evidence, and be heard before the trial court ruled, and he availed himself of those opportunities. The second assignment of error is overruled.

## The Trial Court Correctly Interpreted the Trust Document

**{¶38}** We turn, then, to Avery's eighth and final assignment of error, in which he claims that the trial court misinterpreted the Trust document.

**{¶39}** Interpretation of a trust agreement is a question of law that we review de novo. *Nichols v. Bixler*, 2021-Ohio-129, ¶ 14 (5th Dist.). The court's task is to ascertain the settlor's intent from the language of the instrument as a whole, considered alongside applicable law. *Domo v. McCarthy*, 66 Ohio St.3d 312, 318 (1993).

**{¶40}** The Trust's distributive scheme is straightforward at the start and less so at the end. Article IV, Section D directs that upon Robert's death, the Trust's assets were to be divided equally between his surviving sons: Gregory and Jeffrey. Section E of that same article provides that if either of those named beneficiaries died before Robert did — an event that did not occur — that beneficiary's share was to pass to that son's surviving children. Section F(4) addresses the death of a beneficiary "who is survived by issue," which again did not occur. And Section F(7) — the residuary clause that governs the circumstances presented here — provides that "[i]n the event that there shall be no surviving named beneficiaries, including issue as set forth herein, the trust shall terminate and the proceeds shall be distributed to the then surviving Trustor, as determined by the laws of intestate succession then existing in the State of Ohio."

**{¶41}** Neither Gregory nor Jeffrey fathered any children, and they also both died without leaving behind a valid will. Section F(7) in Article IV of the Trust document is the only provision that addresses the situation, though it appears to direct, rather oddly, that

the trust's assets should go to the "then surviving" creator of the Trust if no beneficiary survives. We look to the surrounding provisions and applicable law to understand the drafter's intent. *In re Estate of Taris*, 2005-Ohio-1516, ¶ 29 (10th Dist.).

{¶42} Three features of the Trust document, read together, resolve the issue. First, Section F(7) directs that any distribution be made "as determined by the laws of intestate succession." Intestate succession of course "arises by operation of law, not through a testamentary document," *Clark v. Beyoglides*, 2021-Ohio-4588, ¶ 24 (2d Dist.), and Ohio's descent-and-distribution provision in R.C. 2105.06 "provides a default distribution scheme to resolve the uncertainty created by intestacy." *Stevens v. Radey*, 2008-Ohio-291, ¶ 8.

{¶43} The reference in the Trust document's Section F(7) to intestacy law would be meaningless if the clause required an actual living trustor. Instead, that clause makes sense only if it directs the distribution of the Trust's assets to those who would take from the trustor by intestate succession: Robert's heirs.

{¶44} Second, the simultaneous-death provision in Article V, Section D calls for Robert to be viewed as the survivor if he were to die simultaneously with either beneficiary, confirming that the Trust's default distributive scheme channels assets back through Robert's family line.

{¶45} And third, we see in Article VI, Section J express language directing that any beneficiary's "accumulated income" that has not yet been paid to that beneficiary at the time of that person's death is to go not to the estate of the beneficiary but instead to that beneficiary's "successors or successor in interest in the trust," foreclosing the construction initially advanced by at least some of the distant heirs and reinforcing the view that the Trust's funds should flow to Robert's heirs.

**{¶46}** Our reading of the document also tracks R.C. 5804.09(C), which provides that, absent contrary language in a trust created for a noncharitable purpose, any property not needed for the use established by the trust's creator is to be distributed to that settlor if living or to that settlor's successors in interest. That statute and the Trust document itself point us in the same direction.

**{¶47}** Avery's competing interpretation — that the reference to "Trustor" in Article IV, Section 7(F) is a scrivener's error that should be read as "Trustee" — is a bridge too far. (Were he correct, he himself would be entitled to the Trust's assets.) Avery is a court-appointed successor trustee and a stranger to the Fox family. No provision of the Trust contemplates distribution to any trustee who is not also a beneficiary, and intestate succession directs assets to decedents, not to court-appointed fiduciaries.

**{¶48}** Avery argues, finally, that Robert's will — executed the same day as the Trust document — disinherits Robert's heirs because it contains language indicating that Robert had (in the words of the will itself) "intentionally and with full knowledge omitted to provide for [his] heirs at the time of [his] death." Yet, that argument inverts the will's function. The will disposed of Robert's testamentary assets, which were poured into the Trust. The will provided that Robert's heirs were not to inherit from him under the will but rather under the Trust. The Trust was the vehicle through which Robert provided for his family: first his sons, then their issue, and, failing those, his own family line through Section F(7). Reading the will's disinheriting clause as also disinheriting Robert's heirs under the Trust would render Section F(7) a nullity and leave the Trust's assets with no rightful owner. We decline to adopt a construction that defeats the only provision of the Trust — Article IV, Section F(7) — that the parties agree controls.

{¶49} Taking the entire language of the Trust document into consideration, we find that the trial court correctly concluded that the Trust should be terminated and that its assets should be given to Robert's heirs in the proportions spelled out in the trial court's order: 25% to Rodney Allen Fox, 25% to Vicki Papazian, 25% to Richard Fox, 12.5% to Tangela Taylor, and 12.5% to Mikayla Taylor. The eighth assignment of error is overruled.

{¶50} For the reasons explained above, the judgment of the Probate Division of the Court of Common Pleas of Richland County is affirmed. Costs are to be paid by appellant Darin Avery.

By: Gormley, J.;

Baldwin, P.J. and

Montgomery, J. concur.